**Earle C. ROBERTS, Plaintiff,**

v.

**PETERSEN INVESTMENTS, et al., Defendants.**

**16 Civ. 2525 (VM)**

United States District Court, S.D. New York.

Signed October 4, 2016

---

Rupert V. Barry, Law Office of Rupert V. Barry, New York, NY, for Plaintiff.

Steven E. Mellen, Winget, Spadafora & Schwartzberg, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Plaintiff Earle C. Roberts ("Roberts") brought this action against defendants Petersen Investments and Peter Alcure (collectively "Petersen"). The complaint alleges that Petersen violated Section 5 of the Securities Act of 1933, 14. U.S.C. Section 77e, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b), 17 C.F.R. Section 240.10b–5, and New York General Business Law Section 352, and that Peterson committed fraud

and breached the fiduciary duty Petersen owed Roberts. (Complaint, Dkt. No. 1.) A parallel arbitration proceeding regarding this matter is currently pending in front of the Financial Industry Regulatory Authority ("FINRA"), with a final merits hearing scheduled for four days beginning on November 14. (See Defendants' Motion to Compel Arbitration ("Motion to Compel"), Dkt. No. 15, at 1.)

After the complaint was filed, Petersen promptly requested leave to file a motion to compel arbitration. (See Dkt. No. 8.) The Court ordered Roberts to show cause as to why the Court should not stay this action and compel arbitration. (See Order to Show Cause, Dkt. No. 10.) Roberts did not respond and the Complaint was dismissed. After the initial dismissal of the Complaint, Roberts requested that the Court reinstate the action (See Plaintiff's Motion to Reconsider, Dkt. No. 11.), which the Court granted, and then submitted letters in support of a motion to stay the related FINRA arbitration proceedings, which the Court denied. (See Plaintiff's Letters to the Court, Dkt. Nos. 13 and 14.) On June 30, 2016, Petersen filed this Motion to Compel Arbitration and requested a stay of all proceedings pending completion of FINRA arbitration. (See Motion to Compel, Dkt. No. 15.) On September 29, 2016, Roberts submitted a letter (The "September 29 Letter") to the Court asserting that his June 6, 2016 letter moving to stay the related FINRA arbitration proceedings (Dkt. No. 13) should be considered a response opposing Petersen's present motion. (Dkt. No. 20.)

For the reasons set forth below, Petersen's Motion to Compel Arbitration and to stay any further proceedings before this Court is GRANTED.

## I. BACKGROUND

This motion concerns three separate agreements signed by Roberts that contained clauses mandating FINRA arbitration of any disputes between the parties. First, Roberts's "New Account Agreement" includes two bolded sections entitled "Arbitration Disclosures" and "Arbitration Agreement," respectively. (See Affidavit of Antonio DiPalma in Support of Motion to Compel ("DiPalma Affidavit"), Dkt. No. 16–1.) The "Arbitration Agreement" states, in relevant part, that:

> Any controversy between you or Pershing and Us shall be submitted to arbitration before and only before the Financial Industry Regulatory Authority.

(See DiPalma Affidavit, Dkt. No. 16–1 at 13.)

Above Roberts's signature, in bold and all capital letters, is the following acknowledgement:

> I acknowledge and agree that this agreement contains a predispute arbitration clause in paragraphs 13 and 14, on page 13. I hereby acknowledge receipt of this new account agreement with predispute arbitration clause therein.

(See id., No. 16–1 at 12.)

Second, Roberts's "Option Agreement" similarly includes two sections entitled "Arbitration Disclosures" and "Arbitration Agreement." (See DiPalma Affidavit, Dkt. No. 16–4.) The two provisions mirror those included in the "New Account Agreement," respectively. Again, directly above Roberts's signature there is an acknowledgement clause that states:

> I understand that this agreement contains a predispute arbitration clause, which is located in paragraphs 14 and 15 on page 3 in this agreement.

(See id., Dkt. No. 16–4 at 1.)

Third, Roberts's "Margin Agreement" includes similar "Arbitration Disclosures" and "Arbitration Agreement" clauses, all in bold print. (See id., Dkt. No. 16–6.)

Directly above Roberts's signature is another acknowledgement that states that the agreement contains a predispute arbitration clause. (See id., Dkt. No. 16–6 at 4.)

In Roberts's September 29 Letter, he expressed opposition to the present motion and referenced a prior June 6, 2016 letter sent to the Court as Roberts's response. (Dkt. No. 20.) In that June 6, 2016 letter, Roberts alleged that his signature was forged on the New Account Agreement and that he received only the last page of the Margin Agreements. (Dkt. No. 13.) Roberts did not dispute the validity of the option agreement and has filed no further response to the current motion.

## II. DISCUSSION

### A. LEGAL STANDARD

■ The Federal Arbitration Act ("FAA") governs whether the Court must compel arbitration. See 9 U.S.C. Section 2 ("A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable ...."). "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, 'according to their terms.'" See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., Ltd., 189 F.3d 289, 294 (2d Cir. 1999) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). Well-established federal public policy strongly favors arbitration as an "alternative means of dispute resolution." Chelsea Square Textiles, 189 F.3d at 294 (describing FAA as evincing "a strong federal policy favoring arbitration"); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (describing FAA as "a Congressional declaration of a liberal federal policy favoring arbitration agreements" (quoting Mo-

ses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (internal quotation marks omitted))). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (quotation marks omitted).

■ Nonetheless, a party may be required to submit a dispute to arbitration only when it has agreed to arbitrate. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); see also Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002). Federal law "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The FAA authorizes the Court to compel arbitration if the parties have entered into an agreement to arbitrate and one party refuses to honor that agreement. See PaineWebber, 81 F.3d at 1198; Bimota SPA v. Rousseau, 628 F.Supp.2d 500, 503–04 (S.D.N.Y. 2009).

### B. APPLICATION

#### 1. Compelling Arbitration

Taken together, the three agreements at issue here reflect a common understanding between Roberts and Petersen that all dis-

putes between the parties would be subject to FINRA arbitration.

■ The two objections raised by Roberts allege fraud regarding the execution of two of the agreements. (Dkt. No. 13.) Any questions regarding "fraud in the inducement of the contract generally" must be answered by the arbitrator, not this Court. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58 (2d Cir. 2012) ("The Federal Arbitration Act, 9 U.S.C. § 1 et seq., however, does not permit the federal court to consider claims of fraud in the inducement of the contract generally.")(internal quotation marks omitted).

■ Furthermore, the Court is not persuaded by Roberts's arguments contending that his signature was forged on the New Account Agreement. Roberts's subsequent two-year history using his account at Petersen undermines his claim that his signature was forged. If there was no underlying agreement regarding the new account, Roberts would not have repeatedly traded using the brokerage account in question. Roberts's second argument, that he was unaware of the presence of an arbitration clause in the Margin Agreement because he signed only the last page of the Agreement, is also unpersuasive. On that last page, directly above Roberts's signature, is an acknowledgement regarding the arbitration clauses contained in the Margin Agreement. At a minimum, that provision should have given Roberts fair notice of the presence of a clause regarding arbitration. Finally, Roberts never disputed that he signed the Option Agreement, which also contains an arbitration clause.

This Court is persuaded that the parties are bound by multiple valid arbitration clauses. Accordingly, Petersen's Motion to Compel Arbitration is GRANTED.

2. Staying All Proceedings Pending Arbitration

■ The FAA directs the district court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. Section 3. The Second Circuit has also held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015), cert. denied, —— U.S. ——, 136 S.Ct. 596, 193 L.Ed.2d 471 (2015). A stay in this case will permit prompt arbitral resolution of Roberts's claim and permit the parties "to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation should judicial participation ... prove necessary." Moton v. Maplebear Inc., No. 15 Civ. 8879, 2016 WL 616343, at *9 (S.D.N.Y. Feb. 9, 2016); see also Begonja v. Vornado Realty Trust, 159 F.Supp.3d 402, 414 (S.D.N.Y. 2016); Merrick v. UnitedHealth Grp. Inc., 127 F.Supp.3d 138, 154 (S.D.N.Y. 2015).

Because Roberts's claims must be submitted to arbitration, Petersen's Motion for a stay is GRANTED.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Petersen Investments and Peter Alcure to compel arbitration of this dispute, pursuant to the Federal Arbitration Act, 9 U.S.C. Section 1 (Dkt. Nos. 15–17) is GRANTED; and it is further

**ORDERED** that all claims brought in this action by plaintiff Earle C. Roberts are stayed against all defendants pending arbitration.